IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REGINALD L. CHAPMAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 22-cv-5510 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| KIMBERLY FOXX, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Reginald Chapman, an Illinois state prisoner convicted of murder, brings this civil rights action pursuant to 42 U.S.C. §1983 against defendant Kimberly Foxx, the former Cook County State's Attorney. In his second amended complaint ("Complaint"), Chapman alleges that he was denied due process under the Fourteenth Amendment and the right to a jury under the Sixth Amendment based on his assertion that Illinois' post-conviction DNA statute, 725 ILCS 5/116-3, is facially unconstitutional. Chapman seeks an order compelling DNA testing for multiple items related to his criminal case. In his words: "Plaintiff brings the present action to pursue DNA testing before this Court." (Dckt. #27 ¶90).1:

Foxx filed a motion to dismiss Chapman's Complaint pursuant to Federal Rule 12(b)(1) arguing that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine because Chapman seeks relief—in the form of DNA testing—that would require this Court to negate a final state court judgment that denied Chapman's motion for the very same DNA testing. In the alternative, Foxx asserts that the Complaint should be dismissed pursuant to Federal Rule 12(b)(6) because Chapman fails to state a claim upon which relief can be granted. For the reasons explained below, the *Rooker-Feldman* doctrine does indeed bar Chapman's

1

claims notwithstanding his facial challenge to the Illinois DNA statute, and Foxx's motion to dismiss, (Dckt. #34), is granted.

I.     LEGAL STANDARD

Where, as here, a defendant's "motion to dismiss is based on a lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b)(6) defenses, the court should consider the Rule 12(b)(1) challenge first." *Rizzi v. Calumet City*, 11 F.Supp.2d 994, 995 (N.D.Ill. 1998).[1] "Motions to dismiss under Rule 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case," and "the Court accepts as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff" when determining whether there is subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014) (cleaned up).

Nevertheless, "a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met," *Ctr. for Dermatology*, 770 at 588–89 , and the court may consider the complaint and matters outside the pleadings—including "pleadings and orders in the state court which [a]re attached as exhibits to [the] motion to dismiss"—to determine if jurisdiction is proper. *Pintozzi v. Scott*, 436 F.2d 375, 378 n.3 (7th Cir. 1970); *Hanover Grp., Inc. v. Mfr. Home Communities Inc.*, No. IP00-0739-C-T/G, 2000 WL 1124877, at *2–3 (S.D.Ind. July 12, 2000) (considering documents from the related state court litigation when determining whether subject-matter jurisdiction is barred by the *Rooker-Feldman* doctrine); *Murphy v. Allen County DCS/CASA*, No. 1:23-cv-00009 -HAB-SLC, 2024 WL 992245, at *6 n.7 (N.D.Ind. Feb. 14, 2024) (same).

---

[1] If the court dismisses a plaintiff's complaint for lack of subject matter jurisdiction, the accompanying Rule 12(b)(6) defenses become moot and need not be addressed. *Rizzi*, 11 F.Supp.2d at 995.

## II. FACTUAL BACKGROUND

The following facts are drawn from the Complaint (Dckt. #27); the Illinois Appellate Court's decision in *People v. Reginald Chapman*, No. 1-18-2400, Summary Order (Ill.App.Ct. Feb. 24, 2022), *petition for leave to appeal denied*, 197 N.E.3d 1138 (Ill. Sept. 28, 2022) (Dckt. #34-1); and the Illinois State Appellate Defender's motion for leave to withdraw as counsel on appeal consistent with *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and pursuant to Illinois law and the supporting memorandum of law filed in *People v. Chapman*, No. 1-18-2400 (Ill.App.Ct. 1st Dist.) (Dckt. #34-2).

Following a 1998 jury trial, Chapman was found guilty of the first-degree murders of his ex-girlfriend Angela Butler ("Angela") and her infant son, Christopher—whose bodies were found in the Calumet River. (Dckt. #27 ¶¶2–3, 25, 55; Dckt. #34-1 at 2). From Chapman's vehicle, officers recovered a piece of weatherstripping and a pair of infant gym shoes, both with blood on them, although the weatherstripping was not tested for DNA. (Dckt. #27 ¶42). From Chapman's house, officers recovered a blanket with blood on it. (*Id.* ¶51). Based on DNA testing, the blood found on the infant shoes and blanket matched Angela's DNA, although Chapman contends the testing methods used at the time are no longer reliable. (*Id.* ¶¶45, 51). Chapman alleges there were several other pieces of relevant evidence that were not tested for DNA evidence, including a baseball bat, a gym bag, a shoe in Angela's size, Angela's clothes, clothing items in Angela's possession when she was found, a pillowcase found near Christopher's body which matched the color of Chapman's sheets, and weights and cords that were attached to Angela and Christopher's bodies. (*Id.* ¶¶39, 46–50).

Chapman was originally sentenced to death for Angela and Christopher's murders; however, his sentence was commuted to life without parole. (*Id.* ¶19). Following his conviction,

3

Chapman filed various petitions—for postconviction relief, relief from judgement, *habeas corpus* relief, and forensic testing—all of which the Circuit Court of Cook County ("trial court") dismissed or denied, and the Illinois Appellate Court affirmed on appeal. (*Id.* ¶¶56–71; Dckt. #34-1 at 3).

On October 8, 2014, Chapman filed a motion with the trial court for forensic testing pursuant to the Illinois DNA testing statute, 725 ILCS 5/116-3 (the "Motion"). (Dckt. #27 ¶84; Dckt. #34-2 at 9-10). In his Motion, Chapman

> alleged his identification as the murderer was based on (1) the fact that he was the last person seen with the victim and (2) a fabricated confession. He requested DNA testing of the blood on the weatherstripping and blanket, asserting that 'more sophisticated testing' unavailable at the time of trial would establish that the blood did not belong to his ex-girlfriend. He also requested DNA testing on the pair of shoes, pillowcase, weights, and a 'size 6 gym shoe and bag.'

(Dckt. #34-1 at 3; Dckt. #27 ¶54; Dckt. #34-2 at 10 (noting that in his Motion, "Chapman stated that [his] identity was at issue at trial, and that it was alleged that he was the last person seen with Angela and that he confessed, but there was no witness to the murder or confession.")).

The Illinois DNA testing statute provides in relevant part:

> (a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of . . . forensic DNA testing . . . on evidence that was secured in relation to the trial or guilty plea which resulted in his or her conviction, and:
>
>> (1) was not subject to the testing which is now requested at the time of trial;
>>
>> (2) although previously subjected to testing, can be subjected to additional testing utilizing a method that was not scientifically available at the time of trial that provides a reasonable likelihood of more probative results.
>
> . . .
>
> (b) The defendant must present a prima facie case that:
>
>> (1) identity was the issue in the trial or guilty plea which resulted in his or her conviction; and

4

> (2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect.
>
> (c) The trial court shall allow the testing under reasonable conditions designed to protect the State's interests in the integrity of the evidence and the testing process upon a determination that:
>
> > (1) the result of the testing has the scientific potential to produce new, noncumulative evidence (i) materially relevant to the defendant's assertion of actual innocence when the defendant's conviction was the result of a trial, even though the results may not completely exonerate the defendant, or (ii) that would raise a reasonable probability that the defendant would have been acquitted if the results of the evidence to be tested had been available prior to the defendant's guilty plea and the petitioner had proceeded to trial instead of pleading guilty, even though the results may not completely exonerate the defendant; . . .

725 ILCS 5/116-3(a)–(c).

The parties started appearing in 2016 to discuss Chapman's Motion. (Dckt. #34-2 at 11). On September 19, 2018, the State and Chapman's counsel informed the trial court that they had agreed to test the piece of weatherstripping. (Dckt. #27 ¶85). Despite this agreement, the trial court stated that it would not sign the parties' proposed agreed order. (Dckt. #34-2 at 12). At a proceeding on October 17, 2018, the trial court *sua sponte* dismissed Chapman's Motion after noting "that the evidence against Chapman was 'beyond overwhelming,' and any further forensic testing would not have changed the outcome." (Dckt. #34-1 at 4).

On October 25, 2018, Chapman appealed the *sua sponte* denial of his petition for DNA testing. (Dckt. #27 ¶87). On August 25, 2021, the Illinois State Appellate Defender filed a motion for leave to withdraw as counsel on appeal based on its opinion that Chapman's appeal "present[ed] no potentially meritorious issues for review" and Chapman filed a response in opposition. (Dckt. #34-2 at 2; Dckt. #27 ¶87). On February 24, 2022, the Illinois Appellate

5

Court agreed with counsel from the State Appellate Defender's Office and granted its motion to withdraw as counsel, "conclud[ing] that there are no issues of arguable merit on appeal," and affirmed the judgment of the trial court. (Dckt. #34-1 at 5). On September 28, 2022, the Illinois Supreme Court denied Chapman's petition for leave to appeal. *People v. Reginald Chapman*, 197 N.E.3d 1138 (Ill. 2022). Chapman thereafter filed this lawsuit on October 7, 2022. (Dckt. #1).

### III. DISCUSSION

#### A. The Relevant Considerations Require Application of the *Rooker-Feldman* Doctrine.

The threshold question before the Court is whether the Court lacks subject matter jurisdiction to hear Chapman's claims under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine is rooted in the two Supreme Court decisions from which the doctrine is named, which hold that lower federal courts do not have the authority to engage in appellate review of state court judgments. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 76 (1983). In other words, the *Rooker-Feldman* doctrine prevents a losing party in state court from "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). As such, the *Rooker-Feldman* doctrine bars a party from seeking review of the judgment in a federal district court even if the state court judgment is erroneous or unconstitutional. *Id.*

The Seventh Circuit, sitting en banc, has recently made clear that the *Rooker-Feldman* doctrine applies when the following four elements are established: (1) the federal plaintiff must have been a state court loser; (2) the state court judgment must have

6

become final before the federal proceeding began; (3) the state court judgment must have caused the alleged injury underlying the federal claim; and (4) the claim must invite the federal district court to review and reject the state court judgment. *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 766 (7th Cir. 2024) (en banc); *see also Shopar v. Pathway Fam. Servs.*, No. 22 CV 02333, 2024 WL 3950215, at *4 (N.D.Ill. Aug. 27, 2024) (same). In addition, "*Rooker-Feldman* does not apply to bar jurisdiction over a plaintiff's federal claim if []he did not have a reasonable opportunity to raise h[is] federal issues in the state court." *Gilbank*, 111 F.4th at 766.

Here, the elements outlined in *Gilbank* are clearly established. Chapman moved for DNA testing and lost, his state court judgment became final before he filed this lawsuit, and the trial court's refusal to order DNA testing caused the injuries underlying his federal claims. Moreover, although Chapman does not expressly ask this Court to reverse the state court judgment, his demand in his request for relief for the same DNA testing he was denied by the state court , (Dckt. #27 at 19–20), effectively extends to this Court "the invitation to undo, reverse, or overturn the state court judgment." *Gilbank*, 111 F.4th at 795 (Kirsch, J., concurring in part);[2] *Shopar*, 2024 WL 3950215, at *4 (when applying *Rooker-Feldman*, "the Seventh Circuit narrowed the focus to the relief sought by a plaintiff"). Indeed, there is no way that Chapman can obtain the relief he seeks here without nullifying the state court judgment. *Gilbank*, 111 F.4th at 795 (plaintiff could be seeking the review and rejection of a state court judgment where "the relief sought would nullify or modify the judgment."). His request for such relief is therefore barred by *Rooker-Feldman*. *Id.*; *Martin v. Greenwood*, No. 24 CV 1421, 2024 WL 5168673, at *3 (N.D.Ill. Dec. 19, 2024) (*Rooker-Feldman* barred plaintiff's "claim that the

---

[2] This portion of Judge Kirsch's concurring opinion constitutes a majority opinion of the en banc Seventh Circuit. *Gilbank*, 111 F.4th at 760; *Shopar*, 2024 WL 3950215, at *4 n.4.

7

funds at issue in his criminal case belonged to him, ought to be returned to him or Antares, or should be declared as belonging to him. Doing so would mean that [plaintiff] did not commit theft or fraud, and that would inherently invalidate the underlying state criminal conviction. It would likewise require this Court to review and reject a state court judgment.").

Finally, there is no indication that Chapman lacked a reasonable opportunity to raise his federal constitutional challenge to the DNA testing statute in the state court. Instead of raising his present argument—that the portion of the Illinois DNA testing statute which requires a prima facie showing that "identity" was the issue in the trial that resulted in the conviction is unconstitutionally vague—Chapman affirmatively stated in his Motion to the state court that identity was at issue at his criminal trial and focused his argument on his assertion that the DNA testing would materially advance his claim of actual innocence. (Dckt. #34-2 at 10–11). For these reasons, the *Rooker-Feldman* doctrine bars Chapman's claim notwithstanding the fact that the stakes for Chapman are high, and that he forcefully asserts that the state courts erred by denying him the DNA testing he seeks. *See Gilbank*, 111 F.4th at 768 ("The high stakes and the possibility of errors, even egregious errors, do not affect application of the *Rooker-Feldman* doctrine.").

      **B.**     **The Supreme Court's Decision in *Skinner v. Switzer* is Distinguishable and does not Preclude the Application of the *Rooker-Feldman* Doctrine in this Case.**

Chapman asserts that the *Rooker-Feldman* doctrine does not apply largely in reliance on the Supreme Court's decision in *Skinner v. Switzer*, 562 U.S. 521 (2011). (*See* Dckt. #39 at 4–5). In *Skinner*, the Supreme Court held that *Rooker-Feldman* "does not preclude a plaintiff from bringing an 'independent claim' that, though similar or even identical to issues aired in state court, was not the subject of a previous judgment by the state court." *Skinner*, 562 U.S. at 532.

8

This principle applied in *Skinner* because the plaintiff did not challenge the state court's decisions and judgment denying him DNA testing under the Texas postconviction DNA statute and he did not seek as relief an order directing that the DNA testing he was denied by the state courts be conducted. *Id.* at 530, 532–33. Instead, plaintiff "challenge[d], as denying him procedural due process, Texas' postconviction DNA statute 'as construed' by the Texas courts," *id.* at 530, and asserted that the "statute was constitutionally inadequate as to *any* prisoner who failed to seek DNA testing before trial." *Cooper v. Ramos*, 704 F.3d 772, 780 (9th Cir. 2012).

In this case, by contrast, Chapman's Complaint is focused almost entirely on the facts of his case and the alleged errors made by the state trial court when it denied his Motion. (Dckt. #27 ¶¶2-5, 11–12, 16, 21–79, 84–90). The trial court made no broad pronouncement as to how the Illinois DNA testing statute should be construed. And, most significantly, Chapman expressly alleges that he is "bring[ing] the present action to pursue DNA testing before this Court," (Dckt. #27 ¶90), and expressly seeks as relief the very same DNA testing that the state court judgment denied him, (*id.* at 19–20).

As explained above, courts must focus on the nature of the relief sought when determining whether *Rooker-Feldman* applies, and the relief sought by Chapman would nullify the state court judgment. Given this, *Skinner* is distinguishable, and the *Rooker-Feldman* doctrine operates as a jurisdictional bar to Chapman's claim notwithstanding the fact that he is also bringing a facial challenge to the Illinois DNA testing statute. *See, e.g., Cooper*, 704 F.3d at 781, *quoting Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 n.4 (9th Cir. 2003) ("Because Cooper in fact challenges the particular outcome in his state case, '[i]t is immaterial that [Cooper] frames his federal complaint as a constitutional challenge to the state court[']s decision[], rather than as a direct appeal of th[at] decision[].'"); *Wade v. Monroe Cnty. Dist. Att'y*, 800 Fed.Appx. 114,

9

118–19 (3d Cir. 2020) (applying *Rooker-Feldman* and distinguishing *Skinner* where plaintiff, whose constitutional challenge to the DNA statute was focused on his specific case, sought an order granting him the DNA testing he was denied by the state court); *Herrick v. Standard*, No. 18-1191, 2023 WL 3137967, at *4–6 (C.D.Ill. Apr. 27, 2023), *appeal dismissed sub nom. Herrick v. Webb*, No. 23-1881, 2023 WL 7319523 (7th Cir. Oct. 27, 2023) (distinguishing *Skinner* and applying *Rooker-Feldman* notwithstanding plaintiff's challenge to the Illinois DNA testing statute on the ground that it was unconstitutionally vague where plaintiff sought as relief the entry of "an order compelling defendants to give him access to the same evidence he sought for testing from the trial court, and to order Defendants to have those items tested.").

In sum: because the *Rooker-Feldman* doctrine applies, this Court lacks subject matter jurisdiction over Chapman's claims. Accordingly, Foxx's motion to dismiss is granted and this case is dismissed for want of jurisdiction.

## CONCLUSION

For the reasons set forth above, defendant Kimberly Foxx's motion to dismiss, (Dckt. #34), is granted and this case is dismissed for want of jurisdiction.

**Date: January 27, 2025**

_____
**Jeffrey I. Cummings**
**United States District Court Judge**